UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


UNITED STATES OF AMERICA


v.                                        CRIMINAL NO. 2:14-00038

DIARRA JERMAINE BODDY


MEMORANDUM OPINION AND ORDER


        Pending is a motion to quash subpoena filed July 30,

2014, by the City of Charleston.



                              I.



        The court recites the facts in the light most

favorable to the nonmovant.


        On September 10, 2013, Officer Brian A. Lightner of

the City of Charleston Police Department was traveling Westbound

on Kanawha Boulevard when his cruiser passed a vehicle driven by

defendant Diarra Jermaine Boddy.  The two made eye contact.[1]

Following an abrupt U-Turn by Officer Lightner, he began

-----------------------
        [1] The City of Charleston appears to assert that Officer
Lightner was traveling at the time to the location of a fellow
officer seeking assistance at 58th Street and MacCorkle Avenue.
Mr. Boddy notes that the Metro Emergency Operations Center
("Metro 911") has no record of such a request for assistance.

following Mr. Boddy.   Both were traveling Eastbound on Kanawha Boulevard.   Mr. Boddy then turned left onto Veazey Street, with Officer Lightner in pursuit.   Officer Lightner asserts that he witnessed Mr. Boddy toss a firearm from his vehicle following the left turn.

Officer Lightner's lights were activated as he proceeded on Veazey Street with his cruiser behind Mr. Boddy's vehicle.   The In-Car Video shows the driver's side door of Mr. Boddy's vehicle opening and then closing, but an ejected firearm is not seen.   Mr. Boddy pulled to the right side of Veazey Street, parked, and exited his car.   He took a couple of steps toward the opposite side of the street.

With his firearm pulled and pointed, Officer Lightner told Mr. Boddy to "Get back in the car, get back in the car." Mr. Boddy backed up and leaned against his car.   Officer Lightner continued to shout instructions to Mr. Boddy, who remained with his back against the car door.   Officer Lightner deployed his Taser® and fired into Mr. Boddy's chest and abdomen.   Mr. Boddy fell to the ground.

Following the arrival of additional officers, Officer Lightner motioned as if directing them to a location where a firearm was apparently recovered.

2

On February 20, 2014, the United States filed a single-count indictment charging Mr. Boddy with possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 18 U.S.C. 924(a)(2).

On July 11, 2014, Mr. Boddy served the City of Charleston with a subpoena requesting "[c]opies of . . . all 'Use of Force Reports' and 'Taser[®] Use Reports' prepared by Sptlm. Brian A. Lightner #3516." (Mot. to Quash, Ex. 1). The City of Charleston contends, and Mr. Boddy does not dispute, that he is already in possession of its reports regarding his arrest and the Use of Force Report, which includes the Supervisory Taser® Use Report. His subpoena appears to seek all such reports ever prepared by Officer Lightner.

## II.

The City of Charleston asserts that Mr. Boddy did not draw the subject subpoena in accordance with Federal Rule of Criminal Procedure 17(c). That appears to be the case, primarily inasmuch as he failed to move the court for its issuance. The subpoena is thus subject to being quashed on that ground. See, e.g., United States v. Beckford, 964 F. Supp. 1010, 1021 (E.D. Va. 1997) (stating "Courts and commentators

which have addressed the issue nearly unanimously have
recognized that, although the rule 'does not clearly require
it,' the use of a motion as the procedural means for invoking
the court's discretion in advance of issuance of a pre-trial
subpoena duces tecum 'is an orderly and desirable procedure and
one frequently followed.'" (quoting 2 Charles A. Wright, <u>Federal</u>
<u>Practice and Procedure</u> § 274 (4th ed. 2014)).

Mr. Boddy now requests, however, that if the court
quashes the existing subpoena he be permitted to move
immediately pursuant to Rule 17(c) for its reissuance.  Rule
17(c) authorizes the issuance of a subpoena duces tecum and
provides pertinently as follows:

> A subpoena may order the witness to produce any books,
> papers, documents, data, or other objects the subpoena
> designates. The court may direct the witness to produce
> the designated items in court before trial or before
> they are to be offered in evidence. When the items
> arrive, the court may permit the parties and their
> attorneys to inspect all or part of them.

Fed. R. Crim. Proc. 17(c).  As noted by our court of appeals,
the Rule represents a practical follow through to ensure the
accused's enjoyment of a basic civil right: "Rule 17(c)
'implements the Sixth Amendment guarantee that an accused have
compulsory process to secure evidence in his favor.'"  <u>In re</u>
<u>Martin Marietta Corp.</u>, 856 F.2d 619, 621 (4th Cir. 1988)
(citations omitted).

4

The showing required for issuance of a pretrial criminal subpoena is well-settled:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

United States v. Nixon, 418 U.S. 683, 699-700 (1974) (footnote omitted); see also United States v. Richardson, 607 F.3d 357, 368 (4th Cir. 2010) (casting the determination as one focused on "'(1) relevancy; (2) admissibility; [and] (3) specificity.'") (quoted authority omitted) (alteration in the original); In re Subpoena Duces Tecum, 228 F.3d 341, 349 n.2 (4th Cir. 2000).

The multipart showing is necessary to avoid the Rule's improper use as a discovery device not contemplated by the drafters:

> [D]iscretion must be exercised in remembrance of the responsibility to prevent Rule 17(c) from being improperly used as a discovery alternative to Rule 16. Congress entrusted the district court with that task by providing that the return date of a subpoena duces tecum may be designated in advance of trial only if a court so "direct[s]" or "permit[s]." Fed. R. Crim. P. 17(c). The requirement of court intervention in the process is not a mere formality. To the contrary, it represents a "vital protection against misuse or improvident use of such subpoenas duces tecum." United States v. Ferguson, 37 F.R.D. at 8. Indeed, without the court's supervision, "Rule 17(c) would lend itself to

5

> discovery of the broadest sort -- a result that the
> drafters of the Rule decried." <u>United States v. Finn</u>,
> 919 F.Supp. at 1329 (citing 2 Wright, Federal Practice
> and Procedure: Criminal 2d § 274 at 153 ("it has always
> been clear that Rule 17(c) was not intended as a
> discovery device . . . .") (citing cases)).

<u>United States v. Beckford</u>, 964 F. Supp. 1010, 1021 (E.D. Va.
1997); <u>see</u> <u>also</u> <u>Richardson</u>, 607 F.3d 357, 368 (4th Cir. 2010)
("[A] fundamental concern is that the subpoena duces tecum is
not intended to provide a means of pretrial discovery; rather,
its primary purpose is simply 'to expedite the trial by
providing a time and place before trial for the inspection of
subpoenaed materials.'") (quoted authority omitted).

Respecting the evidentiary and relevance requirements,
Mr. Boddy asserts that the requested records may demonstrate
racial bias or prior uses of excessive force by Officer
Lightner.  If the records show as much, Mr. Boddy asserts that
would impact "the veracity of . . . [Officer Lightner's]
uncorroborated testimony that [Mr. Boddy] . . . was in
possession of a firearm . . . ."  (Resp. at 5).  Respecting
admissibility, Mr. Boddy asserts the contents of the records
would, at a minimum, be permitted during the cross examination
of Officer Lightner.  These assertions, founded upon
speculation, are insufficient.  Mr. Boddy has likewise offered
nothing that would avoid invocation of the well-established

principle that, "'[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial [under Rule 17(c)].'"  United States v. Hardy, 224 F.3d 752, 756 (8th Cir. 2000) (quoting Nixon, 418 U.S. at 701).

Respecting specificity, Mr. Boddy asserts the subpoena is narrow and not based on rank speculation inasmuch as Officer Lightner's credibility is already suspect based upon (1) the lack of the Metro 911 record discussed supra, and (2) unspecified "confidential tips from Officer Lightner's own fellow officers."  (Resp. at 6).  Those two matters have not been developed on the record from an evidentiary standpoint. They thus do not fortify Mr. Boddy's plea.  Stripped of those arguments, the request for documents is untethered both in substance and temporal scope.  It is properly characterized as a fishing expedition based in conjecture.

It is, accordingly, ORDERED that the motion to quash be, and hereby is, granted.

The Clerk is directed to forward copies of this written opinion and order to counsel for all parties and the movant.

DATED: August 21, 2014

John T. Copenhaver, Jr.
United States District Judge

7