```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                                                    CRIMINAL NO. 2:14-00038

**DIARRA JERMAINE BODDY**

<u>MEMORANDUM OPINION AND ORDER</u>

Pending are defendant's separate motions for new trial and judgment of acquittal, filed September 11, 2014.

I.

On September 10, 2013, Patrolman Brian A. Lightner of the City of Charleston Police Department followed a speeding vehicle on Kanawha Boulevard in Charleston. The vehicle, operated by defendant Diarra Jermaine Boddy, turned left onto Veazey Street. Patrolman Lightner testified that, as his cruiser was turning left on Veazey Street, he witnessed Mr. Boddy toss a firearm from his vehicle.

Patrolman Lightner's lights were activated as he proceeded on Veazey Street with his cruiser behind Mr. Boddy's vehicle. The In-Car Video shows the driver's side door of Mr. Boddy's vehicle open and then closing. Mr. Boddy pulled to the right side of Veazey Street, parked, and exited his car.

Following the arrival of additional officers, Patrolman Lightner directed them to a location where he saw the throw down. A firearm was recovered from the location where the fellow officers were directed.

On February 20, 2014, the United States filed a single-count indictment charging Mr. Boddy with possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 18 U.S.C. 924(a)(2). On February 28, 2014, Mr. Boddy was arraigned and a May 5, 2014, trial date was set. On April 4, 2014, the court granted Mr. Boddy's motion to continue the trial and rescheduled the same for June 16, 2014.

On May 27, 2014, Mr. Boddy moved to compel or, in the alternative, for issuance of a subpoena duces tecum. In broad terms, he sought direction to the Charleston Police Department to disclose any and all documents related to disciplinary actions taken or complaints made against Patrol Officer Brian Lightner. Pursuant to an Agreed Order entered June 6, 2014, the Charleston Police Department was directed to provide a list of such items, which list was furnished to the United States and Mr. Boddy, containing 23 entries. Mr. Boddy selected 16 of those entries for in camera review by the court. On July 3, 2014, the Charleston Police Department submitted the items.

2

On June 11, 2014, the court granted Mr. Boddy's second motion to continue and rescheduled trial for July 29, 2014.  On July 15, 2014, the court filed under seal the items submitted for in camera review.  That same day, Mr. Boddy served upon the Charleston Police Department a subpoena duces tecum seeking, in the broadest possible terms, "Copies of . . . all 'Use of Force Reports' and 'laser Use Reports' prepared by" Patrolman Lightner.  On July 15, 2014, the court continued the trial to August 26, 2014, in order to accommodate the in camera review process.  The trial was later continued one additional day to August 27, 2014.

On July 30, 2014, the Charleston Police Department moved to quash the June 11, 2014, subpoena.  On August 21, 2014, after conducting its in camera review of each of the 16 items, the court found they were neither evidentiary nor relevant.  The single exception related to certain documents, including the CD exhibits, furnished concerning an event that occurred on May 5, 2014.  The court noted that the evidentiary value and relevance of that item was not entirely clear but that it was "appropriately disclosed now in order to avoid possible delay once the trial begins."  (First Ord. at 2 (S.D. W. Va. Aug. 21, 2014).

That same day, the court entered a second order granting the Charleston Police Department's motion to quash the June 11, 2014, subpoena. The order stated, in pertinent part, as follows:

> Respecting the evidentiary and relevance requirements, Mr. Boddy asserts that the . . . [subpoenaed] records may demonstrate racial bias or prior uses of excessive force by Officer Lightner. If the records show as much, Mr. Boddy asserts that would impact "the veracity of . . . [Officer Lightner's] uncorroborated testimony that [Mr. Boddy] . . . was in possession of a firearm . . . ." (Resp. at 5). Respecting admissibility, Mr. Boddy asserts the contents of the records would, at a minimum, be permitted during the cross examination of Officer Lightner. These assertions, founded upon speculation, are insufficient. Mr. Boddy has likewise offered nothing that would avoid invocation of the well-established principle that, "'[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial [under Rule 17(c)].'" <u>United States v. Hardy</u>, 224 F.3d 752, 756 (8th Cir. 2000) . . . .

(Sec. Ord. at 6-7 (S.D. W. Va. Aug. 21, 2014)).

On Saturday, August 23, 2014, Mr. Boddy moved to continue the trial for a period not less than 30 days. The motion stated, in pertinent part, as follows:

> Due to issues associated with some of the electronic data . . . [ordered produced by the court on August 21, 2014] Defendant did not receive copies of the documents and other electronic data until late in the afternoon on Friday, August 22, 2014 -- two business days prior to trial.
>
> Further, even after Defendant received the documents and other electronic data, a number of the electronic files appeared to be encrypted or were otherwise

4

> inaccessible to Defendant, and it will be Monday, August 25, before defense counsel may review that data.
>
> Notwithstanding the foregoing, the documents that are accessible to Defendant indicate that Officer Lightner was found to have used excessive force in taking the complainant in that case into custody, violated department policy in the manner in which he addressed the complainant in that case, and falsified his report of the incident. He was also accused of using racial slurs toward the complainant in that matter.
>
> The present case turns almost entirely upon the credibility of Officer Lightner. Accordingly, Defendant considers any evidence that goes to Officer Lightner's credibility to be critical to his defense.
>
> A careful and thorough investigation of the facts underlying the findings made against Officer Lightner in the above-referenced complaint require more than the forty-eight hours currently available to Defendant.

(Mot. at 2). The information that Mr. Boddy's counsel was partially unable to access consisted of the documents and accompanying CD videos of the May 5, 2014, event.

On August 25, 2014, the United States responded in opposition to the continuance request. On August 26, 2014, the court denied the requested continuance, noting, in part, as follows:

> The defendant seeks a continuance on the ground that the documents and accompanying CD videos of an event on May 5, 2014, involving the government's chief witness, a police officer, but which is unrelated to this case, had just been turned over to the defendant by the court on August 21, 2014, after an in camera review. The court notes that the value of that which was turned over is, if at all, for purposes of impeachment of the officer only. While the defendant

5

> says he encountered some delay in being able to view
> one or more of the CDs because of encryption, the court
> is aware that one or more of the CDs readily viewable
> adequately reflect the incident that may be usable for
> impeachment purposes. Consequently, no delay of
> substance has occurred. In addition, the incident
> itself is straightforward and uncomplicated, and
> requires little reflection or follow up investigation.

(Ord. at 1-2).  The court additionally noted that the case (1) was ready for trial, with witnesses under subpoena, and (2) had twice been continued previously at Mr. Boddy's behest.

On Wednesday, August 27, 2014, trial commenced.  On August 28, 2014, the jury returned its verdict finding Mr. Boddy guilty of the charged offense.  In his motion for new trial and motion for judgment of acquittal, Mr. Boddy asserts that the weight of the evidence is clearly against the verdict inasmuch as the United States failed to prove that he knowingly possessed a firearm beyond a reasonable doubt.  In his motion for new trial alone, he contends that, the interests of justice require the granting of a new trial for several reasons.

II.

A.   Governing Standards

Federal Rule of Criminal Procedure 29(a) provides materially as follows:

6

> After the . . . close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. . . .

Fed. R. Crim. P. 29(a); United States v. Gray, 405 F.3d 227, 238 (4th Cir. 2005); United States v. Ryan-Webster, 353 F.3d 353, 358 (4th Cir. 2003).  Put another way, "[a] judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment."  United States v. Alvarez, 351 F.3d 126, 129 (4th Cir. 2003) (quoting Smalis v. Pennsylvania, 476 U.S. 140, 144 (1986).

The jury's verdict must stand, however, "if there is substantial evidence, taking the view most favorable to the Government, to support it."  Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).  Our court of appeals has defined "substantial evidence" as that which "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  United States v. Newsome, 322 F.3d 328, 333-34 (4th Cir. 2003); Burgos, 94 F.3d at 862.  The credibility of the witnesses is not revisited, and it is assumed that the jury resolved

7

contradictions in testimony in the government's favor. United States v. Romer, 148 F.3d 359, 364 (4th Cir. 1998); see also United States v. Whittington, 26 F.3d 456, 464 (4th Cir. 1994) ("In reviewing the denial of a motion for acquittal, we must determine whether, taking the evidence and all inferences therefrom in the light most favorable to the government, there is substantial evidence which supports a determination of guilt beyond a reasonable doubt.") (citing United States v. Sloley, 19 F.3d 149, 152 (4th Cir. 1994)).

Rule 33(a) provides that a district court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); United States v. Lentz, 383 F.3d 191, 219 (4th Cir. 2004). A district court, however, "'should exercise its discretion . . . sparingly' and . . . should do so 'only when the evidence weighs heavily against the verdict.'" United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003) (quoting United States v. Wilson, 118 F.3d 228, 237 (4th Cir. 1997)).

B.   Analysis

1. Sufficiency of the Evidence

Regarding the weight of the evidence on the knowing possession of a firearm, Mr. Boddy focuses on the testimony of Patrolman Lightner respecting the recovered firearm:

> We are left with the uncorroborated testimony of a police officer; a police officer who claims that he clearly saw a gun tossed from Defendant's car; a police officer who, despite this unequivocal claim, recalls little or nothing about the details of what he observed; a police officer who could not recall whether he observed the gun in question as he rolled past the driveway of Shaffer & Shaffer, even though it was in plain sight; a police officer whose recollection of where he was when he allegedly observed it being tossed from Defendant's car changed after he discovered that the dash-cam on his car did not support his initial version of events; and a police officer who was so clearly agitated by the events that he violated established police procedures applicable to the situation. And a police officer who, when similarly agitated, admitted to having, on at least one occasion, "misremembered" the facts and, as a consequence, erroneously recounted those facts in his report. Thus, when viewed in the aggregate, the actual evidence or lack of evidence (no fingerprints, no DNA, no corroborating witnesses, no testimony as to whether the gun as found was in a condition consistent with having been thrown from a moving car) offered by the Government, is not enough evidence upon which to support the charge. Simply, the evidence presented in the Government's case-in-chief fails to prove that Defendant possessed the firearm beyond a reasonable doubt. Whether the jury was swayed by the Government's unfounded assertions regarding the condition of the gun or simply concluded that it was more likely than not that Defendant did, in fact, toss the gun in question,

9

>there was simply insufficient evidence upon which it could conclude that that was the case beyond a reasonable doubt.

(Def.'s Mot. for Jgt. of Acq. at 7-8).

Based on the trial record, Patrolman Lightner testified that he saw Mr. Boddy throw the firearm from his vehicle. As noted, the firearm was damaged in such a way that the jury could permissibly infer a throw down. Consistent with that testimony and inference is the separate testimony of Corporal Jarl Taylor, who testified that he found the damaged firearm in the vicinity of where Patrolman Lightner indicated it had been thrown. The In-Car Video does not show the moment that the weapon was thrown but it does support other details to which Patrolman Lightner testified. It shows the open driver's side door, Mr. Boddy's actions throughout the traffic stop, Mr. Boddy's volunteered statements that he did not throw the weapon and implying that it was instead a confederate who he said had been in the car with him, a contention that is unsupported by the In-Car video which remained focused on his car.[1]

---

[1] When asked by one of the officers at the scene his name, Mr. Boddy replied, "I wasn't the only one in the car, man. I know he says his camera picked it up. I didn't throw it."

10

This evidence, and the reasonable inferences drawn from it, sufficiently overcome Mr. Boddy's Rule 29 and Rule 33 requests.  The evidence does not weigh heavily against the verdict.

2. The Interests of Justice

Mr. Boddy references the interests of justice with several separate arguments.  First, he contends that arguments made by the United States in rebuttal warrant a new trial.  He notes that the Assistant United States Attorney argued that the condition of the gun found in the driveway of Shaffer & Shaffer was consistent with having been thrown from a moving car.  He asserts that no evidence was presented on the point.

As stated by our court of appeals, "'It is well-settled that prosecutors enjoy wide latitude in arguing to a jury . . .'" Bates v. Lee, 308 F.3d 411, 422 (4th Cir. 2002) (quoting United States v. Young, 470 U.S. 1, 7 (1985)).  It is appropriate to argue facts in evidence and reasonable inferences which may be drawn therefrom.  United States v. Wilson, 135 F.3d 291, 298 (4th Cir. 1998) (stating "a prosecutor may argue that the evidence gives rise to an inference . . . reasonably drawn from the facts in evidence.").

11

As noted, evidence was offered concerning Mr. Boddy throwing the weapon from his vehicle. The throw down could reasonably be inferred to have caused the weapon to strike the concrete driveway, where the gun was found, with such force that it suffered the stock damage shown at trial. Argument concerning the inferred cause of damage to the firearm was proper, especially in view of the court's instruction that the arguments of counsel did not constitute evidence in the case. <u>See</u> (Court's Instrucs. ("[S]tatements and argument of counsel are not evidence in the case. They are intended only to assist the jury in understanding the evidence and the contentions made.")).

Second, Mr. Boddy contends the interests of justice demand a new trial due to the court's refusal of his third request for a continuance, which came nearly on the eve of trial. Mr. Boddy's counsel contends that he was unable to open some of the documents and other electronic data provided to him until after trial. This, he claims, allotted him insufficient material and time to adequately prepare for cross examination of Patrolman Lightner.

The contention fails for at least several reasons. Mr. Boddy does not elaborate concerning the steps he took to

access the documents and data.  It is unknown whether his efforts were impaired by the nature of the electronic restrictions, if any, attached to the documents and data by the government or, instead, the technical limitations of the computer hardware and software used by his office.  If the latter was responsible for the difficulty, there is little reason to complain.  Further, he fails to offer any specific prejudice he suffered as a result of his partial inability to access the documents and data.

What Mr. Boddy does offer, and thus concede, is that he actually possessed substantial impeachment information from the May 5, 2014, incident to cross examine Patrolman Lightner at trial.  That information consisted of Patrolman Lightner's recent falsification of a report arising out of the May 5, 2014, arrest.  The jury received Patrolman Lightner's admission that the falsification consisted of his entry in his report that the arrestee, who went limp, was dragged on his backside some 12 feet from the cruiser into the station house by Patrolman Lightner and other police officers.  It was known to Mr. Boddy that Patrolman Lightner alone had dragged the arrestee into the station house.

In sum, then, Mr. Boddy was able to and did effectively challenge Patrolman Lightner's credibility. This beneficial result, coupled with his failure to (1) identify with particularity why the additional documents and data could not be accessed, (2) their nature, and (3) how their inaccessibility prejudiced him, all demonstrate the interests of justice are not in play respecting this ground.

4.

Mr. Boddy's third interests-of-justice argument seeks a new trial based upon Patrolman Lightner referencing Mr. Boddy having previously (1) been charged with possessing a counterfeit substance, (2) smelling of alcohol at the time of an arrest, and (3) serving a parole term at the time of that arrest. The court had earlier ruled that those matters did not constitute competent evidence and should not be explored. Mr. Boddy's counsel objected to Patrolman Lightner's testimony on the three points. The court not only sustained the objection but struck the offending testimony from the record. Inasmuch as "juries are presumed to follow their instructions," Mr. Boddy has stated an insufficient basis upon which to grant a new trial. <u>United States v. Chong Lam</u>, 677 F.3d 190, 204 (4th Cir.2012) (internal

14

quotation marks and citations omitted); <u>United States v. Min</u>, 704 F.3d 314, 322 n.6 (4th Cir. 2013).[2]

### III.

Inasmuch as Mr. Boddy has not offered the required showings under either Rule 29 or Rule 33, it is, accordingly, ORDERED that the motions for judgment of acquittal and new trial be, and hereby are, denied.

The Clerk is directed to forward copies of this written opinion and order to counsel for all parties and the defendant.

DATED: December 8, 2014

_____
John T. Copenhaver, Jr.
United States District Judge

------------------------
[2] As noted, Mr. Boddy also challenges the August 21, 2014, order granting the Charleston Police Department's motion to quash, asserting that the order is in error and warrants a new trial in the interests of justice. The August 21, 2014, order appropriately resolved the issues presented at the time. There is no basis for revisiting the conclusion therein that Mr. Boddy was attempting to embark upon "a fishing expedition based in conjecture" that was "untethered in both substance and temporal scope." (Ord. at 7 (S.D. W. Va. Aug.21, 2014).